**KMART CORPORATION,**
Appellant–Defendant,

v.

**Donna Fay ENGLEBRIGHT,**
Appellee–Plaintiff.

No. 65A04–9812–CV–593.

Court of Appeals of Indiana.

Nov. 19, 1999.

Patrick L. Miller, Patrick F. Mastrian, III, Goodin & Kraege, Indianapolis, Indiana, Attorneys for Appellant.

Michael C. Keating, Keating, Bumb, Vowels, LaPlante & Kent, P.C., Evansville, Indiana; Thomas L. Montgomery, Montgomery & Montgomery, Evansville, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge

Kmart Corporation ("Kmart") appeals the trial court's order denying its Trial Rule 60(B) motion to set aside the default judgment entered in favor of Donna Englebright. We reverse and remand.

### Issue

Kmart raises one issue for our review which we restate as whether the trial court erred in denying Kmart's motion to set aside the default judgment previously entered in favor of Englebright when Kmart alleged that it had reasonably relied on the representations of Englebright's counsel granting Kmart an indefinite extension of time in which to file responsive pleadings and also that it had a meritorious defense to Englebright's claim.

### Facts and Procedural History

On July 22, 1993, Englebright slipped and fell at a Kmart retail store located in Mount Vernon, Indiana. Consequently, on February 2, 1995, Englebright filed a lawsuit against Kmart in the Posey County Circuit Court seeking to recover damages for the personal injuries she incurred as a result of the fall.

On February 7, 1995, William P. Woods filed with the trial court an appearance as counsel for Englebright. Woods served a

copy of his appearance on Kmart. Kmart forwarded Woods' appearance to IHDS of Michigan, Ltd. ("IHDS"), the entity that administers liability claims brought against Kmart. Subsequently, an IHDS adjuster contacted Woods and requested certain documentation from him. Thereafter, on February 10, 1995, Woods sent the IHDS adjuster a letter informing him that Englebright desired to pursue settlement negotiations with Kmart, and that unless otherwise notified by Woods, it was unnecessary for Kmart to respond to Englebright's complaint or enter its attorney's appearance with the trial court. Woods' attempts to settle Englebright's claim were ultimately unsuccessful, and on February 23, 1996, Woods filed a motion for leave to withdraw as Englebright's counsel, which was later granted by the trial court.

On May 30, 1997, David D. Kiely entered his appearance on behalf of Englebright and filed a motion for a default judgment against Kmart. Consequently, the trial court entered a default judgment in favor of Englebright and against Kmart in the amount of $732,265.72 plus interest and costs. Thereafter, counsel for Kmart entered an appearance with the trial court and filed a Trial Rule 60(B) motion based upon excusable neglect seeking to set aside the default judgment entered in favor of Englebright. On January 30, 1998, the trial court denied Kmart's Trial Rule 60(B) motion. This appeal ensued.

### Discussion and Decision

Kmart contends that the trial court erred in denying its Trial Rule 60(B)(1) motion to set aside the default judgment entered in favor of Englebright. Specifically, Kmart alleges that it has shown excusable neglect in its failure to respond to Englebright's complaint. Moreover, Kmart alleges that it has shown a meritorious defense to Englebright's cause of action.

### A. Standard of Review

The decision whether to set aside a default judgment is given substantial deference on appeal. *Bonaventura v.*
*Leach,* 670 N.E.2d 123, 125 (Ind.Ct.App. 1996), *trans. denied.* Our standard of review is limited to determining whether the trial court abused its discretion. *Bennett v. Andry,* 647 N.E.2d 28, 31 (Ind.Ct.App. 1995). An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 180 (Ind.1993). We may affirm a general default judgment on any theory supported by the evidence adduced at trial. *Breeden v. Breeden,* 678 N.E.2d 423, 425 (Ind.Ct.App.1997). The trial court's discretion is necessarily broad in this area because any determination of excusable neglect, surprise, or mistake must turn upon the unique factual background of each case. *Siebert Oxidermo, Inc. v. Shields,* 446 N.E.2d 332, 340 (Ind.1983). Moreover, no fixed rules or standards have been established because the circumstances of no two cases are alike. *Id.* A cautious approach to the grant of motions for default judgment is warranted in "cases involving material issues of fact, substantial amounts of money, or weighty policy determinations." *Green v. Karol,* 168 Ind.App. 467, 473–74, 344 N.E.2d 106, 110–11 (1976). In addition, the trial court must balance the need for an efficient judicial system with the judicial preference for deciding disputes on the merits. *Teegardin v. Maver's, Inc.,* 622 N.E.2d 530, 533 (Ind.Ct.App.1993). Furthermore, reviewing the decision of the trial court, we will not reweigh the evidence or substitute our judgment for that of the trial court. *Professional Laminate & Millwork, Inc. v. B & R Enterprises,* 651 N.E.2d 1153, 1157 (Ind.Ct.App.1995). Upon a motion for relief from a default judgment, the burden is on the movant to show sufficient grounds for relief under Indiana Trial Rule 60(B). *Jostens Learning Corp. v. Education Sys. Corp. of Indiana,* 651 N.E.2d 1186, 1188 (Ind.Ct.App.1995), *trans. denied.*

### B. Trial Rule 60(B)(1) Motion

 The entry of a default judgment for failure to file a responsive pleading is authorized by Indiana Trial Rule 55(A). After a default judgment is entered, the defaulting party may seek to have it set aside through the procedures of Trial Rule 60(B). Ind. Trial Rule 55(C). Trial Rule 60(B) provides in pertinent part, that "[o]n motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons: (1) mistake, surprise, or excusable neglect...." T.R. 60(B)(1). A Trial Rule 60(B)(1) motion does not attack the substantive, legal merits of a judgment, but rather addresses the procedural, equitable grounds justifying the relief from the finality of a judgment. *Blichert v. Brososky,* 436 N.E.2d 1165, 1167 (Ind.Ct.App.1982). Moreover, a Trial Rule 60(B)(1) motion is addressed to the trial court's equitable discretion, with the burden on the movant to affirmatively demonstrate that relief is necessary and just. *Cazarus v. Blevins,* 159 Ind.App. 512, 514, 308 N.E.2d 412, 414 (1974).

### 1. Excusable Neglect

 There is no general rule as to what constitutes excusable neglect under Trial Rule 60(B)(1). *In re Marriage of Ransom,* 531 N.E.2d 1171, 1172 (Ind.1988). Each case must be determined on its particular facts. *Boles v. Weidner,* 449 N.E.2d 288, 290 (Ind.1983). The following facts have been held to constitute excusable neglect, mistake, or surprise:

> (a) absence of a party's attorney through no fault of party; (b) an agreement made with opposite party, or his attorney; (c) conduct of other persons causing party to be misled or deceived; (d) unavoidable delay in traveling; (e) faulty process, whereby party fails to receive actual notice; (f) fraud, whereby party is prevented from appearing and making a defense; (g) ignorance of the

defendant; (h) insanity or infancy; (i) married women deceived or misled by conduct of husbands; (j) sickness of a party, or illness of member of a family.

*Continental Assurance Co. v. Sickels,* 145 Ind.App. 671, 675, 252 N.E.2d 439, 441 (1969).

Kmart contends that it has shown excusable neglect in failing to file responsive pleadings or even an appearance because it reasonably relied on Englebright's original counsel's representation that he was extending Kmart an indefinite extension of time in which to respond to the complaint and file counsel's appearance. We note initially that this court has repeatedly emphasized the importance of reliable and truthful communication between attorneys. *See Carvey v. Indiana Nat'l Bank,* 176 Ind.App. 152, 160, 374 N.E.2d 1173, 1179 (1978); *see also Condon v. Patel,* 459 N.E.2d 1205, 1207 (Ind.Ct.App.1984). The Indiana Supreme Court has held that "[t]he reliability of lawyers' representations is an important component of the fair and efficient administration of justice ... [a] lawyer's representations have long been accorded a particular expectation of honesty and trustworthiness." *Fire Ins. Exch. v. Bell,* 643 N.E.2d 310, 312 (Ind. 1994). Commitment to these values begins with the oath taken by every Indiana lawyer, which includes a promise that a lawyer will employ "such means only as are consistent with the truth." Ind. Admission and Discipline Rule 22. Moreover, Indiana Professional Responsibility Rule 8.4(c) declares that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." We wholeheartedly believe that an attorney's "word is his bond," as both an officer of the court and a member of the Indiana bar, and thus, his representations may be reasonably relied upon by both his client and the general public.

In the present case, Woods sent a letter to Kmart stating in part that:

> ... after speaking with my client, she has indicated that she would like to ar-

rive at a settlement in this case. It is not necessary for you to enter an appearance or file an answer in this cause until we have notified you to do so. R. 205. Upon receipt of this letter, counsel for Kmart had not yet entered an appearance with the trial court or filed an answer to Englebright's complaint. In fact, at this stage of Englebright's claim, IHDS was acting on behalf of Kmart.[1] R. 75. However, the IHDS adjuster who was investigating Englebright's claim did contact counsel for Kmart, who advised him that Kmart could rely on Woods' representations and postpone responding to Englebright's complaint or filing an appearance with the trial court. R. 76. Relying on Woods' representations, Kmart did not file any documentation with the trial court.

▇▇▇ We believe that it was reasonable for Kmart to rely on Woods' representation that the retail store did not have to respond to Englebright's complaint or file an appearance, unless notified otherwise by him. Woods made the representations to Kmart while acting as counsel for Englebright. The long standing rule in Indiana is that absent fraud or collusion between the attorney and the opposing side, acts or omissions of the attorney are attributable to the client. *See Ferrara v. Genduso*, 214 Ind. 99, 14 N.E.2d 580, 581 (1938) (client bound by attorney's agreement with opposing counsel that judgment could be entered in favor of opposing party). *See also Mid–States Aircraft Engines, Inc. v. Mize Co., Inc.*, 467 N.E.2d 1242, 1248 (Ind.Ct.App.1984) (attorney's statement during a dismissal hearing constituted an admission of the client). Moreover, it is well settled that an attorney, by virtue of the representation, becomes a powerful agent with a great deal of authority. *Koval v. Simon Telelect, Inc.*, 693

N.E.2d 1299, 1302 (Ind.1998). Retention confers on an attorney the general implied authority to do on behalf of the client all acts in or out of court necessary or incidental to the prosecution or management of the suit or the accomplishment of the purpose for which the attorney was retained. *Id.* An attorney is more than a mere agent of the client; an attorney is the sole manager of the business committed to his care. *United Farm Bureau Mut. Ins. Co. v. Groen*, 486 N.E.2d 571, 573 (Ind.Ct.App.1985), *trans. denied; see also Miedreich v. Rank*, 40 Ind.App. 393, 397, 82 N.E. 117, 118 (1907).

Woods sent the letter to Kmart on behalf of Englebright in order to explore the possibility of settling her claim against Kmart. Woods' grant to Kmart of the indefinite extension of time in which to file an answer and an appearance was imputed to Englebright. Therefore, it was clearly reasonable for Kmart to rely on Woods' representations to Kmart that it did not need to file responsive pleadings or counsel's appearance unless notified otherwise by him while Woods was retained by Englebright and acting within the scope of the attorney-client relationship.

▇▇▇ However, Woods did not remain as Englebright's legal representative. On February 21, 1996, Englebright sent a letter to Woods requesting that he withdraw as her counsel. R. 175.[2] On February 26, 1996, Woods sent a letter to the IHDS adjuster who was investigating Englebright's claim notifying him that he no longer represented Englebright. R. 77. Therefore, this case presents the question of whether it was reasonable for Kmart to continue to rely on Woods' representations after he had withdrawn as counsel for Englebright.

---

1. It appears that Kmart often routes personal injury lawsuits by customers to an IHDS adjuster as a means of investigating the validity of a customer's injury and fostering settlement negotiations between Kmart and the customer.

2. We recognize the right of a client to change or substitute attorneys at any stage in the proceedings, provided that the other party is not prejudiced or justice denied. *In re Annexation of Territory to City of Muncie*, 150 Ind. App. 245, 253, 276 N.E.2d 198, 204 (Ind.Ct. App.1971).

Englebright contends that it was unreasonable for Kmart to continue to rely on Woods' representations after he had withdrawn as her counsel. Englebright argues that because Kmart is familiar with the legal process, Kmart had a duty to learn whether the indefinite extension of time in which to file responsive pleadings or retain counsel granted to Kmart by Woods was still in effect. Brief of Appellee at 13.[3] We believe Kmart did not have such a duty in the present case, regardless of its familiarity with the legal process.

After Woods withdrew as Englebright's counsel, there was no communication between Englebright and Kmart for many months. The earliest Kmart would have learned that Englebright had retained new counsel was when Kiely filed an appearance and moved for a default judgment against Kmart on May 30, 1997, fifteen months after Woods had withdrawn as Englebright's counsel. R. 13, 32. At the latest, Kmart learned that Kiely had entered an appearance on behalf of Englebright and had obtained a default judgment against Kmart on August 28, 1997, eighteen months after Woods had withdrawn as Englebright's counsel when Kmart was served with an order to appear for a hearing on Englebright's motion to enforce proceeding supplemental to execution.[4] Regardless of the exact date on which Kmart learned that Englebright had retained new counsel or had obtained a default judgment against Kmart, a significant amount of time elapsed before Kmart realized that Englebright intended to proceed further with the case.

For more than a year, Englebright did not inform Kmart that she was revoking the extension of time granted to Kmart by Woods for responding to her complaint.[5] In addition, for a significant amount of time Kmart had no knowledge of Engle-

---

3. Englebright argues that Kmart had the following courses of action available to them: (1) telephone Woods to determine the identity of the substitute counsel; (2) contact Englebright directly to inquire if she intended to hire a new attorney; or (3) employ an attorney to appear and file an answer so that its interests would be protected regardless of Englebright's intentions. Brief of Appellee at 13.

4. We cannot determine the exact date on which Kmart learned that Englebright had retained new counsel or had obtained a default judgment against Kmart. The record does not contain a certificate of service which would indicate the exact date that Kmart received a copy of Kiely's appearance, the motion for default judgment, or the default judgment entered against Kmart, and thus, it appears that Kmart never received such documents.

5. After reviewing the record, it appears that Englebright and Kiely were unaware that Woods had granted Kmart an indefinite extension of time in which to file responsive pleadings or an appearance. Danielle Genet, Kiely's secretary, stated by affidavit that when she received Englebright's file, it did not contain the February 10, 1995 letter written by Woods to the IHDS adjuster which granted Kmart an indefinite extension in which to respond to Englebright's complaint or file

counsel's appearance. R. 243. Woods testified that he was not sure whether the February 10, 1995 letter he wrote to the IHDS adjuster was contained in the materials he turned over to Kiely, or that any other reference to the indefinite extension of time he granted to Kmart was contained in the file. R. 196. Moreover, Englebright testified that she was unaware of Woods granting Kmart an indefinite extension within which to respond to her complaint or file counsel's appearance. R. 141–42. We recognize that a lawyer is not required to inform a client of every action taken in the representation. However, in the present case we believe that Woods' actions tested the leeway granted by the Indiana Professional Conduct Rules, specifically because he did not inform Englebright or her second attorney Kiely, of the indefinite extension of time he granted to Kmart in which to file responsive pleadings or counsel's appearance. We remind Woods of Indiana Professional Conduct Rule 1.4(a) which provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Moreover, we remind Woods that he is bound by Indiana Professional Conduct Rule 1.16(d) which provides that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as … surrendering papers and property to which the client is entitled…."

bright's retention of new counsel. Kmart argues that it had no knowledge that Englebright had retained Kiely as her legal representative or had obtained a default judgment against Kmart until September 2, 1997.[6] Brief of Appellant at 5. Although Englebright generally would not be obligated to keep Kmart informed of the progress of the case, Woods' representation that he would inform Kmart when they needed to file responsive pleadings or retain counsel created a duty on the part of Englebright to keep Kmart appraised of any change in her intentions with respect to proceeding with the case. Kmart need not establish that Englebright intentionally misled it, only that it was justified in assuming that it need not file responsive pleadings or retain counsel until further notice by her or her legal representative. We believe that Kmart was justified in relying on the representations made by Woods granting Kmart an unlimited time in which to file responsive pleadings and counsel's appearance even after Woods no longer represented Englebright.[7] Because we believe that Kmart was justified in relying on Woods' representations, we must now discern whether or not this reliance constitutes excusable neglect for failing to file an answer or counsel's appearance.

The Indiana Supreme Court has held that it was excusable neglect for an insurance company to fail to file responsive pleadings where its insurance agent failed to notify the insurance company of the plaintiff's lawsuit. *Boles*, 449 N.E.2d at 289. Moreover, we have reversed a trial court's denial of a defendants' Trial Rule 60(B)(1) motion to set aside a default judgment based on excusable neglect where the defendants reasonably relied on a written agreement and oral representations made by plaintiff's counsel which granted the defendants an indefinite extension of time in which to file responsive pleading. *Condon*, 459 N.E.2d at 1207. In addition, we have held that it was excusable neglect for an insurance provider to fail to appear and protect itself from a default judgment because of the plaintiff's representations that he would first depose another party prior to taking action against the insured defendant. *Gallant Ins. Co. v. Toliver*, 695 N.E.2d 592, 595 (Ind.Ct.App.1998), *trans. denied*. This court has also recently held that it was excusable neglect for a defendant to fail to file responsive pleadings where the defendant reasonably relied on the plaintiff's representations that he would not move for a default judgment against the defendant. *McDermitt v. Logan*, 698 N.E.2d 331, 334 (Ind.Ct.App. 1998), *trans. denied*. Thus, we hold that

**6.** After reviewing the record, it appears that the IHDS adjuster acting on Kmart's behalf first learned that Kiely had entered an appearance and obtained a default judgment against Kmart when the loss control manager of the Kmart retail store where Englebright fell called the IHDS adjuster on September 2, 1997. The loss control manager called the adjuster because she had been served with an order to appear for a hearing to be held on September 30, 1997. The hearing was in response to Kiely filing on August 28, 1997, a motion to enforce proceeding supplemental to execution. R. 33, 78. Kmart retained counsel and filed a motion for stay of proceedings to enforce judgment on September 8, 1997. R. 54.

**7.** We note that this court disapproves of "ambush litigation" and "procedural trickery," in the sense that a party utilizes Indiana Trial Rules in a way that prohibits a party from

fully litigating a claim or defending itself from a default judgment. Indiana Trial Rule 60(B) is part and parcel of the court's equitable powers to remedy those instances in which it is unjust for the court to allow a default judgment to stand. We have held that relief from judgment is essentially equitable in nature and, thus, a trial court must balance the alleged injustice suffered by the party moving for relief against the interests of the winning party and society in general in finality of litigation. *King v. King*, 610 N.E.2d 259, 262 (Ind.Ct.App.1993). In the present case, we do not believe that Englebright's attorneys intended to deceive or trick Kmart, but their failure to communicate with each other and Kmart resulted in Kmart essentially being "tricked" into not defending itself against the default judgment entered in favor of Englebright.

Kmart's failure to respond to Englebright's complaint constituted excusable neglect under Trial Rule 60(B)(1) because Kmart reasonably relied on Woods' representations which granted Kmart an indefinite extension of time in which to file responsive pleadings and counsel's appearance.[8]

### 2. Meritorious Defense

To prevail on a motion to set aside a default judgment based on mistake, surprise, or excusable neglect, a party is not only required to show mistake, surprise, or excusable neglect, but also must show that he has a good and meritorious defense to the cause of action. *Burke v. DeLarosa*, 661 N.E.2d 43, 45 (Ind.Ct.App. 1996), *trans. denied.* A meritorious defense is one showing that, if the case was retried on the merits, a different result would be reached. *Bennett*, 647 N.E.2d at 35. The movant need not prove absolutely the existence of a meritorious defense. *Bross v. Mobile Home Estates*, 466 N.E.2d 467, 469 (Ind.Ct.App.1984). However, the movant must show enough admissible evidence to make a prima facie showing of a meritorious defense indicating to the trial court the judgment would change and that the defaulted party would suffer an injustice if the judgment was allowed to stand. *Department of Natural Resources v. Van Keppel*, 583 N.E.2d 161, 163 (Ind.Ct.App. 1991), *trans. denied.* Some admissible evidence must be presented to the trial court showing that the defaulted party would suffer an injustice if the judgment is allowed to stand. *Whelchel v. Community Hosps. of Indiana, Inc.*, 629 N.E.2d 900, 903 (Ind.Ct.App.1994), *trans. denied.* On motion for relief from judgment, the burden is on the movant to demonstrate that relief is both necessary and proper. *Levin v. Levin*, 645 N.E.2d 601, 604 (Ind.1994).

### a. Proximate Cause

We believe that Kmart established that it has meritorious defenses to Englebright's claim. Englebright alleges in her complaint that she was injured in the Kmart located in Mount Vernon, Indiana as a result of Kmart's negligence in failing to keep foreign objects off the floor of the retail store. R. 7. Specifically, Englebright claims that as a result of Kmart failing to keep the floor of the store free of merchandise, she slipped and fell on a glass ball earring lying on the floor near the jewelry counter of the retail store. R. 6. However, Kmart argues that Englebright could not satisfy her burden of proof if her case proceeded to trial. Brief of Appellant at 10.

To recover on a theory of negligence, a plaintiff must establish three elements: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff proximately caused by the breach. *Wickey v. Sparks*, 642 N.E.2d 262, 265 (Ind.Ct.App.1994), *trans. denied.* A person who is invited to enter on land for a purpose directly or indirectly connected with the business dealings of the possessor of the land is a business invitee. *Golba v. Kohl's Dep't Store, Inc.*, 585 N.E.2d 14, 15 (Ind.Ct.App.1992), *trans. denied.* Generally, a landowner has a common law duty to exercise care to keep his property in a reasonably safe condition for a business invitee. *Douglass v. Irvin*, 549 N.E.2d 368, 369 (Ind.1990). Therefore, Kmart had a duty to exercise reasonable care to keep the property reasonably safe for Englebright because she was a business invitee.[9]

---

**8.** Although Kmart did not allege misrepresentation pursuant to .Trial Rule 60(B)(3) as a basis for their motion, we believe that that provision would be at least as strong an argument for setting aside the default judgment entered in favor of Englebright as excusable neglect.

**9.** We note that generally an invitor is not the insurer of the invitee's safety and before lia-

At her deposition, Englebright could not positively state that the earring caused her to fall near the jewelry counter in Kmart. R. 133. Englebright testified that she did not see the earring before she fell, and stated that she probably would have seen the earring lying on the floor of the retail store if she had looked down. R. 128. Englebright also testified that she did not remember feeling the earring underneath her foot before she fell at the retail store. R. 129. Moreover, Englebright testified at her deposition that it had been raining heavily the day she visited Kmart, and that her shoes probably were still wet when she fell in the retail store. R. 113. We believe that Kmart has presented sufficient evidence that it would have a meritorious defense to Englebright's claim because of the uncertainty whether the glass ball earring proximately caused Englebright to fall.

 A plaintiff can recover for negligence only upon establishing that the defendant breached a duty owed to the plaintiff that was the proximate cause of the plaintiff's injuries. *Barsz v. Max Shapiro, Inc.,* 600 N.E.2d 151, 152 (Ind.Ct.App. 1992). A negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated. *McKinney v. Public Serv. Co. of Indiana, Inc.,* 597 N.E.2d 1001, 1005 (Ind. Ct.App.1992), *trans. denied.* Proximate cause does not mean approximate, it means the immediate, nearest, direct, next in order, and, in its legal sense, closest in causal connection. *Walker v. Jones,* 511 N.E.2d 507, 509 (Ind.Ct.App.1987). The requirement of foreseeability is directly related to the rule that an intervening cause may serve to cut off the liability of one whose original act sets in motion the chain of events leading to the injury. *Id.* Such intervening cause is not a concurrent or contributing cause, but is a superseding cause. If the intervening cause is foreseeable, the original tort-feasor cannot escape liability because of it. *Id.* Conversely, if the intervening cause is not foreseeable as a natural consequence of the original act, then the original tort-feasor cannot be held liable for injuries caused by the intervening action. *Id.* Kmart has presented evidence that Englebright's wet shoes and not the earring may have been the proximate cause of her falling in the retail store. Furthermore, Englebright pleaded that Kmart was negligent in failing to keep foreign objects off of the floor, not in keeping the floor dry. R. 6–7. Thus, Kmart has presented a meritorious defense to Englebright's claim, specifically negating the causation element of Englebright's negligence claim against the retail store.

### b. Comparative Fault

 In addition, we believe that Kmart has shown a meritorious defense to the amount of damages the trial court awarded to Englebright. Englebright testified in her deposition that she was looking at the earring rack located in Kmart and not at the floor when she fell. R. 124. She further testified that had she been looking at the floor, she would have noticed the earring. R. 128. Therefore, a jury could possibly find Englebright at least partially at fault for failing to avoid the glass ball

bility may be imposed on the invitor, the invitor must have had actual or constructive knowledge of the danger. *Carmichael v. Kroger Co.,* 654 N.E.2d 1188, 1191 (Ind.Ct.App. 1995), *trans. denied.* However, this court has recognized the modern merchandising method of self-service where the customer handles the merchandise instead of the merchandising method of individual clerk assistance, and has held that the modern merchandising store is charged with the knowledge of the foreseeable risks inherent in such a mode of operation. *Golba,* 585 N.E.2d at 15. The law imputes such knowledge as a quid pro quo for the economic advantages afforded to the merchant for mass advertising. *Id.* Kmart is clearly a modern merchandising store because the customer handles the merchandise instead of an employee of the retail store.

**1260**

earring lying on the floor of the retail store.

The Comparative Fault Act (the "Act") which became effective January 1, 1985, provides a scheme for allocating liability among persons whose negligence has contributed to an injury. Ind. Code §§ 34–51–2–1 to 19; *Templin v. Fobes,* 617 N.E.2d 541, 544 (Ind.1993). The Act reflects a legislative determination that fairness can be best achieved by a relative assessment of the parties' respective conduct. *Dickison v. Hargitt,* 611 N.E.2d 691, 697–98 (Ind.Ct.App.1993). The primary objective of the Act was to abrogate the harshness of the common law rule of contributory negligence under which even a slightly negligent plaintiff was precluded from recovery. *Koziol v. Vojvoda,* 662 N.E.2d 985, 988 (Ind.Ct.App. 1996). Under the Act, the total fault for an accident is apportioned between the plaintiff, defendant, and any other negligent person who is properly named as a nonparty. Ind.Code § 34–51–2–7. Rather than completely foreclosing a plaintiff's recovery, under the Act, the plaintiff's recovery is reduced by the proportion of fault attributable to him. Ind.Code § 34–51–2–5. The common law contributory negligence defense is partially retained in that a plaintiff who is more than 50% at fault is precluded from recovery. Ind.Code § 34–51–2–6. The proportional allocation of fault is the means by which the Act's objectives are reached, not the ends to which it aspires. *Bowles v. Tatom,* 546 N.E.2d 1188, 1190 (Ind.1989). In the present case, we believe that Kmart has shown that the trier of fact could have apportioned the fault between Kmart and Englebright.

### Conclusion

Based on the foregoing, we hold that Kmart has established that it was entitled to relief from the default judgment by demonstrating excusable neglect and a meritorious defense. Therefore, the trial court abused its discretion in denying Kmart's Trial Rule 60(B)(1) motion to set aside the default judgment entered in favor of Englebright. Accordingly, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

Reversed and remanded.

FRIEDLANDER, J., and RILEY, J., concur.