Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 21 2012, 9:18 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JEFFREY S. ZIPES**
**BLAKE N. SHELBY**
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEES:

**DAVID W. STONE, IV**
Stone Law Office & Legal Research
Anderson, Indiana

**TROY K. RIVERA**
Nunn Law Office
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THE KROGER COMPANY, d/b/a, JAY C FOOD STORE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 47A04-1204-CT-194 |
| | ) | |
| DEBORAH and DAVID TINCHER, | ) | |
| | ) | |
| Appellee-Plaintiffs. | ) | |

APPEAL FROM THE LAWRENCE SUPERIOR COURT
The Honorable Michael A. Robbins, Judge
Cause No. 47D01-1104-CT-397

**September 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

The Kroger Company, d/b/a Jay C. Food Store (Kroger) appeals the denial of its Trial Rule 60(B) motion to set aside a default judgment in favor of Deborah and David Tincher in their personal injury action against Kroger. Kroger presents the following restated issues for review:

1. Was the service of process sufficient to confer personal jurisdiction over Kroger?

2. Did the trial court abuse its discretion in denying Kroger's motion for relief from judgment?

We affirm.

For purposes of this appeal, the relevant facts are essentially undisputed. On September 30, 2010, Deborah was a customer inside the Jay C. Store in Mitchell when she slipped and fell to the floor. The Tinchers contacted Kroger's third-party administrator, Sedgwick Claims Management Services, and attempted to resolve their claim for damages without resort to litigation. They worked directly with Sedgwick claims examiner David James. Negotiations ultimately failed, however, and James denied the Tinchers' claim on December 7, 2010. James closed the file the next day.

On December 10, 2010, James received a letter from Attorney Troy Rivera, who represented the Tinchers in this matter, asking him to reconsider the denial of their claim. James indicated that the decision would not be revisited. James was next contacted by the Tinchers when, on April 6, 2011, Rivera called and advised him that if Kroger did not reconsider the denial of the claim, the Tinchers would file a lawsuit. James indicated that the decision would not change. On April 8, 2011, James received a courtesy copy of a complaint

for damages reflecting a lawsuit filed by the Tinchers against Kroger concerning Deborah's fall. The courtesy copy did not bear a file stamp or a cause number. On April 12, 2011, the Jay C. Food Store where Deborah fell was served with a file-marked copy of the complaint. At approximately the same time, a file-stamped copy of the same complaint was faxed to James. Erroneously believing it to be another courtesy copy, James failed to do what he customarily did when he received a complaint, which was "to send it to the 'next level' team at Sedgwick such that the file could be re-opened and outside counsel could be retained to defend Kroger's interests." *Appellant's Appendix* at 19. Instead, James did nothing and the file remained closed.

On September 27, 2011, the Tinchers filed a motion for default judgment. That motion was granted on December 5. Sedgwick received notice of the default judgment on January 27, 2012. On February 21, on Kroger's behalf, Sedgwick filed a motion to set aside the default judgment pursuant to T.R. 60(B)(1), which provides as follows: "On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons: (1) mistake, surprise, or excusable neglect[.]" Kroger appeals the denial of this motion.

1.

Citing T.R. 60(B)(6), Kroger contends the service of process was insufficient to confer personal jurisdiction over Kroger and therefore the judgment is void. "Personal jurisdiction" refers to a court's power to bring a person into its adjudicative process and render a valid judgment over that person. *Laflamme v. Goodwin*, 911 N.E.2d 660 (Ind. Ct.

3

App. 2009).  Where service of process on a defendant is inadequate, the trial court does not

acquire personal jurisdiction over that party, and a default judgment thereafter rendered in the

absence of personal jurisdiction is void.  *Yoder v. Colonial Nat'l Mortg.*, 920 N.E.2d 798

(Ind. Ct. App. 2010).   After the party contesting jurisdiction challenges the lack thereof, the

plaintiff must present evidence to show there is personal jurisdiction over the defendant.  *Id.*

"The defendant, however, bears the burden of proving the lack of personal jurisdiction by a

preponderance of the evidence, unless the lack of jurisdiction is apparent on the face of the

complaint."  *Laflamme v. Goodwin*, 911 N.E.2d at 664.  "Personal jurisdiction either exists or

it does not, and its existence is a question of law that we review de novo."  *Id*.  Accordingly,

we owe no deference to the trial court's determination on that question.

Kroger contends that service was ineffective because the summons was not addressed

to a particular person.  According to Kroger, "to properly effectuate service, the Indiana Trial

Rules require that a summons be addressed ***to an agent of the corporation being served***, and

service of process is inadequate when the summons is not addressed to a specific person."

*Appellant's Brief* at 6 (emphasis in original).

The appropriate method for serving process on an organization is set out in Indiana

Trial Rule 4.6, which provides, in pertinent part:

> (A)   Service upon an organization may be made as follows:
> (1) In the case of a domestic or foreign organization upon an executive
> officer thereof, or if there is an agent appointed or deemed by law to
> have been appointed to receive service, then upon such agent.
>
> * * * * *
>
> (B)   Service under subdivision (A) of this rule shall be made on the proper

4

person in the manner provided by these rules, for service upon individuals ....

Trial Rule 83(1) provides the following definition of "executive officer":

'Executive officer' of an organization includes the president, vice president, secretary, treasurer, cashier, director, chairman of the board of directors or trustees, office manager, plant manager, or subdivision manager, partner, or majority shareholder. For purposes of service of process, notice and other papers, the term includes the personal secretary of any of the foregoing persons or any person employed under or with any of the foregoing persons and who is entrusted with responsible handling of legal papers, and any person employed in the organization if such person promptly delivers the papers served to one of the foregoing.

Kroger contends that the Tinchers' method of service did not comply with the foregoing rules and therefore that the trial court did not obtain personal jurisdiction over Kroger. Kroger directs our attention to *Volunteers of Am. v. Premier Auto Acceptance Corp.*, 755 N.E.2d 656 (Ind. Ct. App. 2001), in support of this claim.

In *Volunteers of Am.*, an employer, Volunteers of American (VOA) brought a motion for relief from default judgment granted to Premier Auto Acceptance Corporation (Premier), a creditor in a garnishment action. In a small claims action, Premier had obtained a money judgment against VOA employee Ron Parmerlee. To satisfy the judgment, Premier filed a motion for proceedings supplemental naming VOA as a garnishee defendant. The trial court granted Premier's motion, and a summons was sent to "Volunteers of America" at its Fort Wayne address. Parmerlee signed the return receipt for the summons but did not forward the summons to anyone else in the VOA organization. Other items were sent to the Fort Wayne VOA office over the next several months, but no executive officer or registered agent of VOA ever received the items. Another time, Parmerlee signed for the garnishment order that

5

was addressed to "Volunteers of America" at its Fort Wayne address, but Parmerlee again failed to forward the order to anyone else in the VOA organization. The trial court eventually entered a default judgment against VOA. More than one month after the trial court had entered a default judgment, VOA received a "Verified Motion for Proceedings Supplemental and Order thereon" that was addressed to the "Highest Ranking Officer" at VOA's Fort Wayne address. *Id.* at 658. VOA responded with a T.R. 60(B)(6) motion asking the trial court to set aside the default judgment because it had never been properly served with process. The trial court denied that motion, as well as VOA's subsequent motion to correct errors.

Upon appeal, we first rejected VOA's claim that service was ineffective because it was sent to a local office rather than the main office. We next addressed the claim that service was inadequate because the summons was addressed simply to "Volunteers of America" and was not addressed to the resident agent, "executive officer", "highest available officer", "Highest Executive Officer", or the "chief executive officer." *Id.* at 660. This court held that "Volunteers of America" was not enough to satisfy the requirements of T.R. 4.6. In so holding, the court rejected Premier's contentions that service was proper under both T.R. 4.15(F) ("[n]o summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond") or T.R. 4.16(B) (providing "that anyone who accepts service for another person has a duty to deliver that mail to the appropriate person, to notify the appropriate person that

6

he has the mail, or to notify the court that he was unable to deliver the mail"). *Volunteers of Am. v. Premier Auto Acceptance Corp.*, 755 N.E.2d at 660.

Kroger contends that service was improper here because, as was the case in *Volunteers of Am.*, the Tinchers did not send the summons to any particular person, but instead merely to Kroger. The Tinchers respond with a "no harm[-]no foul" defense, arguing essentially that any defect in service was merely technical in nature, and that the summons was, in fact, brought to the attention of the appropriate parties with respect to the handling of this lawsuit. *Appellant's Brief* at 8. In support of this contention, they cite *Munster v. Groce,* 829 N.E.2d 52 (Ind. Ct. App. 2005).

In *Munster*, the summons in question was sent only to BWI, the corporate defendant, and not to an individual associated with BWI. The court noted, however, that the summons had been delivered by an investigator to the residence of George Mikesell who was listed as a director of BWI in its articles of incorporation. The summons and complaint were personally received by Mikesell's wife. The investigator telephoned Mikesell the next day to confirm that he had received the summons. The trial court later dismissed the complaint filed against BWI in part on grounds that Mikesell's wife did not have actual or apparent authority to accept service on BWI's behalf.

Among the contentions addressed by this court was the argument that service upon Mikesell was ineffective "because the summons was directed only to BWI, not to Mikesell or any other person, such as a 'director' or 'officer' of BWI." *Id*. at 63. The court rejected *Volunteers of Am.* as precedent, distinguishing that case on the following bases:

This case, however, clearly differs from *VOA* because that case concerned mailings to VOA's office that subsequently were never brought to the attention of a high-ranking corporate officer. Here, by contrast, the summons and complaint were delivered directly to Mikesell's residence and he acknowledged receipt of them; there was no chance that the summons and complaint would fail to follow the proper internal corporate channels to a high-ranking officer or director because they were delivered directly to a director. As such, even if there was a technical defect in the summons to BWI, the method of service by delivery at Mikesell's residence still was reasonably calculated to inform BWI of the pending lawsuit and, in fact, did provide such notice. Trial Rule 4.15(F) excuses minor, technical defects in the method of service where actual service has been accomplished. *See Reed Sign Service, Inc. v. Reid,* 755 N.E.2d 690, 696 (Ind.Ct.App.2001), *trans. denied.* In sum, Munster sufficiently complied with the Indiana Trial Rules so as to effect service upon BWI and give the trial court personal jurisdiction over it. Likewise, as we have indicated the method of service on BWI was reasonably calculated so as to provide it with notice of the lawsuit and, therefore, comports with the Due Process Clause. *See Mullane,* 339 U.S. at 314, 70 S.Ct. at 657. We reverse the trial court's grant of the motion to dismiss with respect to BWI.

*Id*. at 64.

In the present case, as in *Munster,* the summons did not designate service upon any individual, either by name or title. It is undisputed, however, that Sedgwick, the entity selected by Kroger to handle claims such as the Tinchers', received the complaint and summons within three days of the service at the local store. Indeed, like Mikesell in *Groce*, James acknowledged receiving a copy of the complaint, notwithstanding that he misunderstood the nature of what he had received, believing it to be merely another courtesy copy of a proposed complaint. Under these circumstances, we conclude that the technical defect in the Tinchers' complaint of failing to designate a person to receive service on behalf of Kroger is excused under T.R. 4.15(F), because it was reasonably calculated to inform Sedgwick, and thus Kroger, that an action has been instituted against it. Service of process

8

was therefore sufficient to confer personal jurisdiction over Kroger.

2.

Kroger contends the trial court abused its discretion in denying its motion for relief from judgment. The standard for reviewing the denial of a T.R. 60(B) motion to set aside a default judgment is well settled - we apply an abuse-of-discretion standard. *Clements v. Hall*, 966 N.E.2d 757 (Ind. Ct. App. 2012). An abuse of discretion occurs when the trial court's judgment is clearly against the logic and effects of the facts and circumstances supporting the motion for relief. *Id.* We have observed that a trial court's discretion in this context is "necessarily broad" and that the decision "must turn upon the unique factual background of each case." *Mallard's Pointe Condo. Ass'n, Inc. v. L & L Investors Grp., LLC,* 859 N.E.2d 360, 365–66 (Ind. Ct. App. 2006), *trans. denied* (citations omitted). Moreover, we are aware that the trial court "must balance the need for an efficient judicial system with the judicial preference for deciding disputes on the merits." *Id.* In reviewing a ruling on a T.R. 60(B) motion to set aside, we do not reweigh evidence. *Clements v. Hall*, 966 N.E.2d 757.

Kroger filed its motion under T.R. 60(B)(1). A default judgment may be set aside under this rule for mistake, surprise, or excusable neglect – the latter being the contention upon which Kroger's motion is based. In order to prevail on this issue, a party "must establish (1) excusable neglect and (2) a meritorious basis to set aside the judgment—also referred to as prejudice." *Thompson v. Thompson*, 811 N.E.2d 888, 903 (Ind. Ct. App. 2004), *trans. denied*. Included in instances of excusable neglect are breakdowns in communication that result in a party's failure to appear. *See Smith v. Johnston*, 711 N.E.2d 1259 (Ind. 1999).

9

Kroger contends that is what occurred in the present case. Where a breakdown of this nature is established, the criteria of T.R. 60(B)(1) are met and a default judgment must be set aside. *Id.* Any doubt as to the sufficiency of the showing of excusable neglect or inadvertence should be resolved in favor of the request to set aside the judgment. *United Taxi Co. v. Dilworth*, 20 N.E.2d 699 (Ind. Ct. App. 1939). A trial court's discretion in this area is necessarily broad because any determination of excusable neglect, surprise, or mistake must turn upon the unique factual background of each case. *Kmart Corp. v. Englebright,* 719 N.E.2d 1249 (Ind. Ct. App. 1999), *trans. denied.* Our courts have not fixed rules or standards by which to measure requests to set aside on these bases because the circumstances vary from case to case. *Id.* The trial court must balance the need for an efficient judicial system with the judicial preference for deciding disputes on the merits. *Id.*

Three days after the Jay C. Food Store was served with the summons and complaint on April 12, 2011, the Tinchers' counsel faxed a copy of the file-marked complaint to James at Sedgwick. Sedgwick was Kroger's third-party administrator and was responsible for handling lawsuits of this nature. It is undisputed that Kroger's failure to respond to the Tinchers' summons and complaint was due entirely to James's failure to notice that the faxed copy of the complaint was file-marked, and not merely a second courtesy copy of an unfiled complaint, which James apparently expected it to be. Kroger acknowledges that James's failure to send the complaint to the "next level team" at Sedgwick – which in turn would have reopened the file and obtained outside counsel to defend Kroger's interests – was a neglectful act. Of course, that is true. Kroger further contends that this neglect was

excusable.  We disagree.

James worked for the company that handled lawsuits against The Kroger Company. He had been personally responsible for negotiating with the Tinchers and had denied their claim.  He had been advised that the Tinchers would file a lawsuit and the implication was that such was imminent.  Two days later he received a courtesy copy of an unfiled complaint from the Tinchers and one week after that he received a faxed copy of a the same complaint – this one file-stamped.  He did nothing because he neglected to notice the file-stamp.  This is distinguishable from decisions finding excusable neglect.  "In those cases the defendants did all that they were required to do but subsequent misunderstandings as to the assignments given to agents of the defendants resulted in the failure to appear."  *Smith v. Johnston*, 711 N.E.2d at 1262.  In *Smith*, entry of default judgment was a result of the appellant's failure to read his mail.  James's failure to scrutinize the fax closely enough to notice the file-stamp strikes us as similar in tenor with respect to its negligent character.  "The judicial system simply cannot allow its processes to be stymied by simple inattention."  *Id*.  Having failed to establish excusable neglect, Kroger's challenge to the denial of its motion to set aside also fails.

Judgment affirmed.

BROWN, J., and PYLE, J., concur.

11