## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 12 2020, 9:18 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Cindy L. Kenworthy
Indianapolis, Indiana

Randall L. Parr
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

William O. Harrington
Danville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gerardo Avila-Arroyo,

*Appellant-Respondent,*

v.

Tania Torres,

*Appellee-Petitioner*

June 12, 2020

Court of Appeals Case No. 19A-DR-2723

Appeal from the Hendricks Superior Court

The Honorable Rhett M. Stuard, Judge

Trial Court Cause No. 32D02-1603-DR-177

**Altice, Judge.**

# Case Summary

Forty-two months after Tania Torres filed a petition for dissolution of marriage from Gerardo Avila-Arroyo, the trial court held a final hearing at Tania's request. Gerardo did not attend. Thereafter, the trial court entered a dissolution decree, custody order, and property settlement based on the information submitted by Tania. Claiming he did not have timely and sufficient notice of the final hearing, Gerardo filed a motion to correct error and Ind. Trial Rule 60(B) motion to set aside, both of which the trial court denied. Gerardo now appeals, presenting two issues for our review:

> 1. Did the trial court abuse its discretion in denying his T.R. 60(B) motion for relief from judgment?
>
> 2. Did the trial court abuse its discretion in denying his motion to correct error?

We affirm in part, reverse in part, and remand with instructions.

# Facts & Procedural History

Tania and Gerardo were married on December 12, 2003. They have one child together, who was born in May 2005, and Tania has an older child who lived with them in the marital residence. Tania filed a petition for dissolution on March 23, 2016. At the time, she was represented by Attorney Charles Engel. During the pendency of the proceedings, the parties continued to reside in the marital residence.

[4]     A preliminary hearing was scheduled for May 17, 2016, and the Hendricks County Clerk (the Clerk) issued a summons via certified mail to Gerardo at the marital residence. An entry in the chronological case summary (CCS) states that the certified mail was delivered to and signed for by Gerardo. The preliminary hearing was continued two separate times because the parties were trying to work out an agreement, and a third scheduled hearing was "cancelled". *Appellant's Appendix Vol. II* at 9. In March 2017, the action was dismissed without prejudice pursuant to Ind. Trial Rule 41(E), but later reinstated upon Tania's motion in which she noted that the parties were "circulating a final agreement." *Appellee's Appendix Vol. Two* at 15. The matter was again subject to T.R. 41(E) dismissal in November 2017, but Tania requested that the matter remain on the court's docket. Shortly thereafter, Attorney Engel withdrew his appearance. In May 2018, the matter was subject to T.R. 41(E) dismissal for a third time. After Tania responded asking that the matter not be dismissed, the trial court scheduled a final hearing for August 14, 2018, and issued notice to the parties.

[5]     Tania and Gerardo, both pro se, appeared for the August 14 hearing. The hearing was continued to October 2, 2018, to give the parties "additional time for settlement negotiations." *Appellant's Appendix Vol. II* at 12. Tania appeared for the October 2 hearing, but Gerardo did not. The court ordered the parties to submit to mediation, and the CCS reflects that notice was issued to Gerardo. In all, the trial court issued four separate orders for Tania and Gerardo to attend mediation. Tania and Gerardo appeared for three separate mediation

sessions[1]—November 19, 2018, March 25, 2019, and May 21, 2019—but were unable to reach an agreement.

[6] On June 11, 2019, Tania filed a motion asking the trial court to set the matter for a final hearing. The trial court granted the motion the same day and scheduled the final hearing for August 13, 2019. The court sent notice of the final hearing to Gerardo via certified mail on June 12, 2019. The CCS notes that the certified mail was delivered on June 14, 2019 and that the signature was "illegible". *Id*. at 15.

[7] The final hearing was held as scheduled. Tania was present, but Gerardo failed to appear. At the start of the hearing, Tania informed the court that Gerardo was aware of the hearing but was unable to attend because he had to work. She told the court that the day before, Gerardo had asked her to request a continuance of the hearing and that she had faxed something to the court, although there was no record thereof. Gerardo did not personally contact the court. When asked how she wanted to proceed, Tania stated that she wanted to go ahead with the hearing and finalize the divorce. The court moved forward with the final hearing and permitted Tania to testify and present her evidence.

[8] Tania began by explaining that the delay in finalizing the divorce was because she and Gerardo could not agree on how to divide the marital property, which included two homes (their marital home in Pittsboro and a duplex in

---

[1] A fourth mediation session was continued by agreement of the parties.

Brownsburg) and two restaurants. Tania further explained that Gerardo controlled their finances and that she had no access to information about the businesses. The little evidence Tania did present included property tax records for their two houses, a stock purchase agreement for one of their restaurants, and a payroll check ledger.

With regard to the marital residence, tax records showed that Gerardo purchased the home in 2007 for $105,000. As of March 2019, the house was valued at $168,400 for tax purposes. Tania believed the mortgage had been paid off. The duplex was in both of their names and was purchased in 2011 for $113,498. In 2019, the duplex was valued at $213,700 for tax purposes. Tania testified that Gerardo's family rented both units of the duplex and that she believed the rent was $700 a month per unit.

Tania also testified that she and Gerardo owned two restaurants—Elegance, located in Brownsburg, and Flap Jack's Pancake House in Indianapolis. Tania submitted a stock purchase agreement dated August 24, 2015, by which Gerardo had purchased all of the shares for Flap Jack's for $115,000.[2] With regard to Elegance, Tania testified that the seller could not locate the documents but told her that they purchased Elegance in December 2008 for $100,000. Tania did not have any information concerning the income from either of the restaurants, explaining that Gerardo did not let her have access to

---

[2] The stock purchase agreement provided that Gerardo would pay $50,000 at closing and that thereafter he would make 65 monthly payments of $1000, with the last payment due in March 2021.

that information. She testified, however, that she did not think the restaurants were profitable.

[11] As to their respective incomes, Tania testified she works at Elegance as a hostess, scheduler, and front manager, and that for fifty hours worked over a two-week period, she takes home about $314. She explained that Gerardo would give her extra money to cover expenses for the children and other things. She estimated that between her paycheck and the money Gerardo gave her, she received about $2000 a month. Tania told the court that Gerardo works at both restaurants in an ownership/managerial/fill-in-cook capacity and that he receives checks from both restaurants. She submitted a check ledger for May 2019 indicating that for a two-week period, Gerardo received a check for $952.78 from Elegance and a check for $797.08 from Flap Jack's.

[12] Tania told the court that she wanted sole legal and primary physical custody of their son and explained that she and Gerardo had been working together to make sure his needs were met. She requested that they both be responsible for the credit cards in their own names and that she receive one of the three cars they owned. With regard to personal belongings, Tania testified that she wanted to keep her bedroom furniture, the bedroom furniture used by the boys, the televisions in the boys' rooms, a television in the living room, a personal computer, and the lawn mower, if she got to keep the house. She told the court that Gerardo could have any other personal belongings he wanted. In the end, she asked the court to divide the marital property 50/50. In closing, Tania told the court that they initially hired Attorney Engel because they wanted to "get it

over with" but because they were not making any progress, they stopped using him. *Transcript Vol. II* at 38. She claimed that Gerardo had agreed to pay half of the attorney fees and she submitted a bill showing that there was an outstanding balance of $4381 for legal services rendered. The court took the matter under advisement.

[13] The trial court issued its Findings and Final Order of Dissolution (the Dissolution Order) on August 28, 2019. The court noted that Gerardo "received proper notice" of the hearing but did not attend. *Appellant's Appendix Vol. II* at 20. The court also acknowledged that Tania presented minimal evidence thereby leaving the court "in the position of trying to value the properties based on very little information." *Id.* at 21. The court valued the marital home at $150,000 and the duplex at $125,000 and awarded both to Tania. The court valued the two restaurants at a combined total of $275,000 and awarded both businesses to Gerardo. The court awarded Tania sole legal and physical custody of the couple's son and ordered Gerardo to pay $198 per week in child support. The court also ordered Gerardo to pay the outstanding balance owed to Attorney Engel.

[14] On September 26, 2019, Gerardo, by counsel, filed a motion to correct error and a T.R. 60(B) motion to set aside the Dissolution Order and attached thereto documents concerning the valuation of the two homes and the two restaurants as well as documents relating to his income. The trial court summarily denied Gerardo's motion to correct error without a hearing. The court did, however, hold a hearing on October 29, 2019 on Gerardo's T.R. 60(B) motion. At the

outset, the court informed Gerardo that it would be denying his request for relief. The court explained:

> [T]here's no mistakes, surprise, excusable neglect or fraud or misrepresentation here. Your client had notice of the hearing. He had notice of the final hearing and opted not to show up, that was his choice. Uh, it was entirely his choice. He made no effort to call the court. He made no effort to, uh, discuss it with us, uh, . . . he just didn't want to be here, uh, and, uh, that's on him. . . . [Tania] did tell us that morning that he had asked her to ask for a continuance, uh, but that's not her responsibility to do. That's his responsibility to do. He has to ask for a continuance not her. He didn't bother to call. He did not bother to file anything.

*Transcript Vol. 2* at 46-47. The court based its finding of notice on the certified mail card returned to the Clerk and the fact that Gerardo asked Tania to request a continuance. Gerardo's attorney was then permitted to argue to the court that he did not have timely and/or sufficient notice of the nature of the hearing. At the conclusion of the hearing, the trial court denied Gerardo's request for relief. Gerardo now appeals. Additional facts will be provided below as necessary.

## Discussion & Decision

### *Standard of Review*

The discretion of the trial court lies at the heart of this case. We review a trial court's denial of a motion for relief from judgment for an abuse of discretion. *Dillard v. Dillard*, 889 N.E.2d 28, 34 (Ind. Ct. App. 2008). Likewise, we review a trial court's denial of a motion to correct error for an abuse of discretion. *Principal Life Ins. Co. v. Needler*, 816 N.E.2d 499, 502 (Ind. Ct. App. 2004). "An

abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or when the trial court has misinterpreted the law." *Pfaffenberger v. Jackson County Regional Sewer Dist.*, 785 N.E.2d 1180, 1183 (Ind. Ct. App. 2003).

### 1. Motion for Relief from Judgment

T.R. 60(B) provides, in pertinent part, as follows:

> On motion and upon such terms as are just the court may relieve a party ... from an entry of default, final order, or final judgment ... for the following reasons:
>
> (1) mistake, surprise, or excusable neglect; [or]
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]

In addition, "[a] movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense." T.R. 60(B) "affords relief in extraordinary circumstances which are not the result of any fault or negligence on the part of the movant." *Dillard*, 889 N.E.2d at 34. Although Gerardo requests relief under subsections (1) and (3), his arguments address only whether his failure to attend the final hearing was excusable neglect.

"A Trial Rule 60(B)(1) motion does not attack the substantive, legal merits of a judgment, but rather addresses the procedural, equitable grounds justifying the relief from the finality of a judgment." *Kmart Corp. v. Englebright*, 719 N.E.2d 1249, 1254 (Ind. Ct. App. 1999) (citation omitted). Because "[t]here is no

general rule as to what constitutes excusable neglect under Trial Rule 60(B)(1)," "[e]ach case must be determined on its particular facts." *Id*. (citations omitted). In this vein, we are guided by the words of the late Judge Michael Barnes, subsequently adopted by our Supreme Court, stating that excusable neglect is "not just neglect", but rather it is "something that can be explained by an unusual, rare, or unforeseen circumstance." *Huntington Nat. Bank v. Car-X Assoc. Corp.*, 39 N.E.3d 652, 656 (Ind. 2015) (quoting *Huntington Nat. Bank v. Car-X Assoc. Corp.*, 22 N.E.3d 687, 694 (Ind. Ct. App. 2014) (Barnes, J., dissenting), *trans. granted*).

[18] Gerardo's motion for relief from judgment is based on his claim that he did not have notice of the "nature and scope" or the "gravity" of the hearing. *Appellant's Brief* at 16, 23. He maintains that had he been so apprised by the court or Tania, he would have secured counsel and attended the final hearing and presented his evidence. To support his claim that he did not have adequate notice of the final hearing, Gerardo points to the entry on the CCS where it was noted that the certified mail card attached to the notice of the hearing addressed to him was returned and that the signature was "illegible." *Appellant's Appendix Vol. II* at 15. He also faults Tania for failing to tell him about the nature of the hearing and for failing to obtain a continuance.

[19]     The illegible signature is of no consequence here.  Gerardo admits that he had actual notice of the August 13 hearing.[3]  As to the nature of the hearing, Gerardo stated that he "did not even necessarily believe [Tania]" because he had not received notice from the court and he "assumed the matter was a compliance hearing following unsuccessful mediation."  *Appellant's Brief* at 39, 40.  Gerardo took no responsibility for his failure to appear, asserting that because he had no reason to believe a hearing had been set, he "bore no obligation to ask the trial court for a continuance."  *Id.* at 39.  He also asserts that under the circumstances, he "did all that was required of him".  *Id.*

[20]     Gerardo was pro se throughout the entire proceedings.  A pro se litigant "is held to the same standards as a trained attorney and is afforded no inherent leniency simply by virtue of being self-represented."  *See Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014).  To that end, we note our longstanding rule that "attorneys have a general duty to regularly check court records and monitor the progress of their pending cases."  *M & J Servs., Inc. v. VMK, Inc.*, 561 N.E.2d 827, 830 (Ind. Ct. App. 1990).  These proceedings had been pending for over three and a half years.  The final hearing had been set for two months.  As a pro se litigant, Gerardo had a duty to stay apprised of the proceedings.  Indeed, Gerardo also acknowledges on appeal that he "could have, and in hindsight, perhaps should have contacted the court" the morning of the final hearing.

---

[3] Gerardo claims that he became aware of the hearing the night before.  Tania asserts that they discussed the hearing as many as three days prior to the scheduled date.

*Appellant's Brief* at 21. Instead, he improperly put the burden on Tania to request a continuance and relied on his own assumptions that the hearing was of no significant consequence. The trial court found that under the circumstances, Gerardo's failure to appear for the final hearing did not amount to excusable neglect. His claim on appeal that had he known of the significance of the final hearing he would have secured counsel is self-serving. Indeed, Gerardo did not find it prudent to secure counsel prior to attending the first scheduled final hearing or mediations. Gerardo has not shown that the trial court abused its discretion in denying his motion for relief from judgment.

### 2. Motion to Correct Error

[21] Gerardo argues that the trial court erred in deciding child custody, valuing and dividing the marital property (i.e., the parties' homes and restaurants), and calculating income and child support. A motion to correct error cannot be used to present evidence to the court that could have been presented during the proceedings giving rise to the court's decision. *See Johnson v. Rutoskey*, 472 N.E.2d 620, 623 (Ind. Ct. App. 1984) (noting that "Trial Rule 59(H)(1) affidavits cannot be used to present evidence that a party neglected to present" during proceedings before the court). Except for the calculation of child support, the evidence on which Gerardo predicates his claims of error could have been presented at the final hearing had he appeared. Indeed, Gerardo attached to his motion to correct error his own affidavit containing averments that he could have presented through his own testimony as well as documents that were readily available at the time of the final hearing. The trial court did

not abuse its discretion in summarily denying Gerardo's motion to correct error as to its custody determination, income calculation, and valuation and division of marital assets.

[22] There is one error alleged by Gerardo that is based on evidence that was presented to the court during the final hearing. With regard to the court's calculation of child support, consistent with Tania's testimony at the final hearing, the court found in its order that Tania's income was $314 every two weeks and that Gerardo's income was $1750 every two weeks. On the child support worksheet, however, the court used these figures for the parties' respective *weekly* incomes. Clearly the figures used by the court were established as the parties' *biweekly* income. The trial court therefore erred in calculating child support. We reverse the trial court's child support order and remand for recalculation based on the parties' respective weekly incomes.

[23] Judgment affirmed in part, reversed in part, and remanded with instructions for the trial court to recalculate child support.

Bailey, J. and Crone, J., concur.