**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 22 2014, 10:23 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**MARGARET WALTON**
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**WHITNEY L. MOSBY**
**KARL L. MULVANEY**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARGARET WALTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A04-1402-MF-87 |
| | ) | |
| CLAYBRIDGE HOMEOWNERS | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable J. Richard Campbell, Judge
Cause No. 29D04-0801-MF-31

**October 22, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Margaret Walton, *pro se*, appeals the trial court's denial of her motion for relief from judgment under Trial Rule 60(B). Margaret raises one issue, which we revise and restate as whether the trial court erred in denying her motion. Claybridge Homeowners Association, Inc., ("Claybridge") requests attorney fees under Ind. Appellate Rule 66(E). We affirm the denial of Margaret's motion under Trial Rule 60(B) and deny Claybridge's request for appellate fees.[1]

## FACTS AND PROCEDURAL HISTORY

In October 2001, Claybridge filed a complaint against Margaret's daughter Deborah Walton, who lived in a house located on certain real property (the "Real Estate") in the Claybridge subdivision in Hamilton County. Walton v. Claybridge Homeowners Ass'n, Inc., No. 29A05-1006-MF-399, slip op. at 1 (Ind. Ct. App. Jan. 20, 2011) (the "2011 Opinion"), trans. denied. Deborah later filed a counterclaim against Claybridge. Id. In 2002, Claybridge obtained an injunction against Deborah to prevent her from interfering with Claybridge's performance of duties under the subdivision's covenants.[2] Id.

On July 15, 2004, the trial court entered an order awarding damages to Claybridge in the amount of $248 for damages, $64,600 for attorney fees, and the cost of suit in the action against Deborah.[3] Id. The court declined to enter a final judgment because Walton's

---

[1] We issue an opinion today in the related cause of JPMorgan Chase Bank, N.A. v. Claybridge Homeowners Ass'n, Inc. v. Deborah M. Walton, No. 29A02-1202-MF-65 (Ind. Ct. App. Oct. 22, 2014). As referenced below, there have been a number of previous appeals in the litigation involving the property at issue in this case.

[2] This court affirmed the issuance of the injunction. 2011 Opinion at 1 n.2 (citing Walton v. Claybridge Homeowners Ass'n, No. 29A04-0207-CV-348 (Ind. Ct. App. July 15, 2003), trans. denied).

[3] This court affirmed the attorney fees award. 2011 Opinion at 1 n.3 (citing Walton v. Claybridge Homeowners Ass'n, 825 N.E.2d 818, 826 (Ind. Ct. App. 2005)).

counterclaim was pending. Id. On December 4, 2006, the court entered judgment in favor of Claybridge on Deborah's counterclaim.[4] Id.

On January 16, 2007, the trial court entered an order (the "January 2007 Judgment") which provided it was a final judgment in favor of Claybridge and against Deborah. Id. The January 2007 Judgment was not entered in the trial court's judgment docket. Id. at 3. At the time of the January 2007 Judgment, the recorded deed reflecting the owner of the Real Estate was a quitclaim deed (the "2001 Quitclaim Deed") dated June 27, 2001, and recorded with the Hamilton County Recorder on July 10, 2001, conveying the Real Estate to Deborah. A quitclaim deed (the "2007 Quitclaim Deed") dated June 28, 2001, was recorded with the Hamilton County Recorder on April 12, 2007. Deborah conveyed the Real Estate by the 2007 Quitclaim Deed to herself and Margaret as joint tenants with rights of survivorship.

On October 30, 2007, Claybridge filed a Complaint to Foreclose Judicial Lien (the "Foreclosure Complaint") alleging the court's July 15, 2004 order was a valid lien against the Real Estate and that it was entitled to enforce the terms of the judgment. Id. The Foreclosure Complaint named a number of defendants, including Margaret, Fifth Third Mortgage Company ("Fifth Third"), which had recorded a mortgage on the Real Estate on April 11, 2006 (the "Fifth Third Mortgage"), and First Indiana Bank, N.A. ("First

---

[4] This court affirmed that judgment. See 2011 Opinion at 1 n.4 (citing Walton v. Claybridge Homeowners Ass'n., No. 29A04-0701-CV-44 (Ind. Ct. App. Oct. 19, 2007), trans. denied). There was another appeal, between Deborah and her title insurer, also related to this litigation. Id. at 1 n.1 (citing Walton v. First Am. Title Ins. Co., 844 N.E.2d 143 (Ind. Ct. App. 2006), trans. denied).

Indiana"), which had recorded a mortgage on the Real Estate on June 16, 2006 (the "First Indiana Mortgage").[5] Id. The Foreclosure Complaint alleged in part:

9. Margaret is named as a defendant in this proceeding to answer as to any interest which she may have in the Real Estate as a result of the [2007 Quitclaim Deed] dated June 28, 2001, and recorded on or about April 12, 2007, as Instrument No. 2007-020527 in the Office of Hamilton County, Indiana. The interest of Margaret, if any, is inferior and subordinate to that of Claybridge.

Appellee's Appendix at 2-3. Claybridge requested that its judgment be declared a valid lien against the Real Estate, a judgment of foreclosure of the lien, and an order directing the sale of the Real Estate.

Also on October 30, 2007, Claybridge filed a Lis Pendens Notice stating that it had filed its Foreclosure Complaint for foreclosure of a judicial lien in its favor which may result in a sale of the Real Estate. The Lis Pendens Notice, dated and file-stamped October 30, 2007, in the record includes a handwritten notation on the second page stating "Lp 10 pg 84." Appellee's Appendix at 122. The chronological case summary (the "CCS") indicates Deborah and Margaret were each personally served with the Foreclosure Complaint and a summons on November 7, 2007.

On November 13, 2007, Deborah and Margaret executed a promissory note in the amount of $473,000 in favor of Washington Mutual Bank, and the note was secured by a mortgage on the Real Estate, executed by Deborah and Margaret and recorded on November 27, 2007 (the "JPMorgan Mortgage").[6] JPMorgan, according to its December

---

[5] The Foreclosure Complaint also named as defendants CitiBank (South Dakota), N.A., American Express Company, Affordable Home Renovations Inc., and Stewart Irwin, P.C.

[6] JPMorgan attached to its motion to intervene a signed copy of a settlement statement in connection with the closing of the loan from Washington Mutual Bank on November 13, 2007. The settlement

4

19, 2013 motion to intervene discussed below, is the successor in interest to Washington Mutual Bank and the holder of the JPMorgan Mortgage.

Deborah and Margaret, by counsel, filed an Answer on May 8, 2009, in which they admitted that, on or about July 15, 2004, Deborah was the owner of the Real Estate, that on that date the court entered a judgment in favor of Claybridge and against Deborah, that the judgment was a valid lien against the Real Estate, and that Claybridge was the holder of the judgment.[7] On September 18, 2009, Claybridge filed a motion for summary judgment and a motion for default judgment and decree of foreclosure. Fifth Third did not appear or respond to the Foreclosure Complaint, the trial court issued an order of default judgment against Fifth Third with a file-stamped date of September 30, 2009, and the CCS does not indicate Fifth Third appealed the default judgment.[8] Deborah moved to dismiss the Foreclosure Complaint on the basis that there was no valid, final judgment by which a judgment lien could have been established. 2011 Opinion at 1. The trial court, while agreeing that the July 15, 2004 order did not constitute a final judgment, nonetheless denied the motion to dismiss, noting the January 2007 Judgment. Id.

On May 19, 2010, the court signed an order, which was file-stamped on May 27, 2010, titled Summary Judgment Entry and Decree of Foreclosure in Favor of Claybridge (the "Foreclosure Decree"). The court entered summary judgment in favor of Claybridge

---

statement shows that the loan amount was $473,000 and that there was or would be a disbursement for the payoff of the Fifth Third Mortgage in the amount of $468,982.20.

[7] The Answer stated that Deborah and Margaret were without sufficient information to admit or deny the allegation in paragraph 9 of the Foreclosure Complaint.

[8] The court also entered default judgment against CitiBank, American Express, Affordable Home Renovations, and Stewart Irwin, P.C.

and against Deborah, Margaret, and First Indiana, ordered a foreclosure sale of the Real Estate, and gave priority to Claybridge's judgment lien over the First Indiana Mortgage. Id. at 2. The Foreclosure Decree ordered in part:

1. That [Claybridge] be, and it hereby is, granted an *in rem* judgment against Deborah M. Walton, Margaret J. Walton, and First Indiana Bank, in the principal sum of $64,848.00, plus statutory interest from July 15, 2004 to and including the date of the entry of summary judgment, plus advances for real estate taxes, assessments, insurance premiums and any necessary expenses to preserve and protect the Real Estate [] incurred to date of Sheriff's sale and including court costs, together with continuing post judgment interest at the statutory rate, all without relief from valuation and appraisement laws.

2. That the [J]udgment [L]ien of [Claybridge] be, and hereby is, foreclosed as the first and prior lien and the equity of redemption of the defendants, Deborah M. Walton, Margaret J. Walton and First Indiana Bank, and all persons claiming under and through said defendant(s) is hereby foreclosed on the [Real Estate].

3. The Real Estate shall be sold by the Sheriff of this County to satisfy the sums found to be due [Claybridge] as soon as said sale can be had under the laws of this jurisdiction governing the sale of foreclosed property . . . .

Appellant's Appendix at 62-63.

Deborah appealed from the Foreclosure Decree and argued that there was no final judgment upon which a lien could have been based, that the January 2007 Judgment did not give rise to a lien that Claybridge was entitled to act upon, and that the trial court erred in ordering foreclosure of the lien, and this court affirmed. See 2011 Opinion at 2-6. Specifically, in our 2011 Opinion, we determined that "the trial court's final judgment of January 16, 2007 [the January 2007 Judgment], which . . . unmistakably incorporated the previous monetary award against [Deborah], clearly was sufficient to permit the establishment of a judgment lien against [her] interest in any real property in Hamilton

6

County that could be foreclosed as to [her], or any other party who had actual notice of the judgment against her." Id. at 4. In August 2013, Claybridge requested a sale of the Real Estate, and it was scheduled to be sold by the Hamilton County Sheriff on January 9, 2014.

On December 19, 2013, JPMorgan filed a "Combined Motion to Intervene, to Stay January 9, 2014 Sheriff Sale, to Vacate Order of Sale, to Vacate the May 27, 2010 Summary Judgment and Decree of Foreclosure, and Request for Expedited Hearing on Motion." Appellee's Appendix at 44. On December 27, 2013, Claybridge filed a response to JPMorgan's motion to intervene. JPMorgan filed a reply on January 2, 2014. On January 8, 2014, the court stayed the scheduled sheriff's sale.

On January 10, 2014, the court held a hearing on JPMorgan's motion to intervene at which counsel for JPMorgan and Claybridge presented arguments.[9] After hearing the parties' arguments, the court asked if it was correct that there was "nothing in any of these exhibits or documents about the title search that was done by Washington Mutual," and the parties agreed that was correct. January 10, 2014 Transcript at 30. The court stated that "I think it comes down to the notice, the lis pendens notice, which I think should have been picked up by Washington Mutual before they wrote or accepted the mortgage." Id.

On January 16, 2014, the court entered an order denying JPMorgan's December 19, 2013 motion to intervene. The court found that on October 30, 2007, Claybridge filed a Lis Pendens Notice with the Hamilton County Clerk providing notice of the January 2007 Judgment and pending foreclosure action, that on November 13, 2007, Deborah and Margaret refinanced the Fifth Third Mortgage on the Real Estate and executed a new

---

[9] Deborah and Margaret were not present at the hearing.

7

mortgage to Washington Mutual Bank, and that JPMorgan is the holder of that mortgage. The court found that "JPMorgan had notice of this foreclosure action by virtue of the properly filed and valid Lis Pendens Notice." Appellant's Appendix at 66. The court found that JPMorgan's request to intervene six years after the filing of the Lis Pendens Notice was not timely. The court denied JPMorgan's request to intervene, ordered that JPMorgan took its interest in the Real Estate subject to the first lien of Claybridge, denied JPMorgan's request to vacate the Foreclosure Decree, and found that Claybridge had a judgment lien on the entirety of the Real Estate. JPMorgan filed a notice of appeal from the court's January 16, 2014 order denying its December 19, 2013 motion to intervene.[10]

On January 31, 2014, Margaret, *pro se*, filed a motion for relief from the Foreclosure Decree. Margaret argued that she was entitled to relief under Trial Rule 60(B)(3), that Claybridge "misrepresented the facts of the case to the court, leading the court to believe that the monetary judgment was against both Margaret Walton and Deborah Walton," that "[a]pparently a Sheriff alleged he served the foreclosure papers by hand to Margaret [], an[d] this is untrue," and that Claybridge "failed to inform the court that Margaret [] owns fifty percent of the [Real Estate] and her interest predates the Judgment Claybridge obtained against Deborah []." Id. at 13-15. The court denied Margaret's motion for relief. Margaret, *pro se*, filed a notice of appeal from the denial of her motion for relief from judgment.

---

[10] We issue a separate opinion with respect to JPMorgan's appeal.

8

DISCUSSION

I.

The issue is whether the trial court abused its discretion in denying Margaret's motion for relief under Ind. Trial Rule 60(B). Margaret, *pro se*, says in her statement of the case that, while her motion for relief from judgment "cited Trial Rule 60(B)(3), the basis claimed was actually Rule 60([B])(8)." Appellant's Brief at 3. She asserts that the Foreclosure Decree, the court's January 16, 2014 order denying JPMorgan's motion to intervene, and several other filings were sent to the address of the Real Estate rather than to her post office box address and thus that she was denied her right to present her case and right to appeal. Margaret further argues that there is a genuine issue of material fact because she has an equity interest in the Real Estate as a joint tenant with rights of survivorship. She also appears to argue that Claybridge was not truthful in suggesting to the trial court that Claybridge's judgment predated Margaret's interest in the Real Estate and notes that Claybridge filed its initial lawsuit against Deborah on October 15, 2001. Margaret requests a hearing to show she has an equity interest in the Real Estate that predates Claybridge's judgment against Deborah.

Claybridge maintains that Margaret's motion for relief was untimely under Trial Rule 60(B)(3) because the motion was filed over three years after the entry of the Foreclosure Decree and that she cannot show a meritorious claim or defense because Claybridge did not make any misrepresentation of fact, Margaret's interest in the Real Estate was foreclosed by the Foreclosure Decree, and that evidence before the trial court showed that a conveyance was intended by the 2007 Quitclaim Deed no earlier than April

2007. Claybridge argues that Margaret cites to Trial Rule 60(B)(8) for the first time on appeal and thus waived her claim under that sub-paragraph. Claybridge further asserts that Margaret's argument that she was not served with notice, "at best, is a claim for excusable neglect under Rule 60(B)(1)" and that her motion is untimely under sub-paragraph (1). Appellee's Brief at 21. Claybridge also argues Margaret's motion was not filed within a reasonable time as required under sub-paragraph (8) because she was aware of and involved in the foreclosure action and did not allege a meritorious defense under Rules 60(B)(1) or (8) because she did not did not assert her interest in the Real Estate in the foreclosure action and did not appeal the Foreclosure Decree.

A grant or denial of equitable relief under Ind. Trial Rule 60 is within the discretion of the trial court. Wagler v. West Boggs Sewer Dist., Inc., 980 N.E.2d 363, 371 (Ind. Ct. App. 2012), reh'g denied, trans. denied, cert. denied, 134 S. Ct. 952 (2014). We review a trial court's ruling on Rule 60 motions for an abuse of discretion. Id. An abuse of discretion occurs when the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. Id. When reviewing the trial court's determination, we will not reweigh the evidence. Id. Ind. Trial Rule 60(B) affords relief in extraordinary circumstances which are not the result of any fault or negligence on the part of the movant. Id. at 371-372. On a motion for relief from judgment, the burden is on the movant to demonstrate that relief is both necessary and just. Id. at 372. A trial court must balance the alleged injustice suffered by the moving party against the interests of the party who prevailed and society's interest in the finality of judgment. Id.

Ind. Trial Rule 60(B) provides in part:

10

On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons:

> (1)  mistake, surprise, or excusable neglect;
>
> * * * * *
>
> (3)  fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> * * * * *
>
> (6)  the judgment is void;
>
> * * * * *
>
> (8)  any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).

The motion shall be filed within a reasonable time for reasons (5), (6), (7), and (8), and not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3), and (4). A movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense. . . .

A Trial Rule 60(B)(1) motion does not attack the substantive, legal merits of a judgment, but rather addresses the procedural, equitable grounds justifying the relief from the finality of a judgment. Kmart v. Englebright, 719 N.E.2d 1249, 1253 (Ind. Ct. App. 1999), trans. denied. The burden is on the movant to affirmatively demonstrate that relief is necessary and just. Id. A motion for relief from judgment under Rule 60(B) is not a substitute for a direct appeal. In re Paternity of P.S.S., 934 N .E.2d 737, 740 (Ind. 2010). There is no general rule as to what constitutes excusable neglect under Trial Rule 60(B)(1). Kmart, 719 N.E.2d at 1254. Each case must be determined on its particular facts. Id.

11

A party making a claim under Trial Rule 60(B)(3) and alleging fraud or misrepresentation must demonstrate that: (1) the opposing party knew or should have known from the available information that the representation made was false, and (2) the misrepresentation was made with respect to a material fact which would change the trial court's judgment." Seleme v. JP Morgan Chase Bank, 982 N.E.2d 299, 310-311 (Ind. Ct. App. 2012) (internal quotation marks and citation omitted), reh'g denied, trans. denied.

The trial court's residual powers under sub-paragraph (8) may only be invoked upon a showing of exceptional circumstances justifying extraordinary relief. Brimhall v. Brewster, 864 N.E.2d 1148, 1153 (Ind. Ct. App. 2007), trans. denied. "Among other things, exceptional circumstances do not include mistake, surprise, or excusable neglect, which are set out in [Trial Rule] 60(B)(1)." Id. This court has explained:

> T.R. 60(B)(8) is an omnibus provision which gives broad equitable power to the trial court in the exercise of its discretion and imposes a time limit based only on reasonableness. Nevertheless, under T.R. 60(B)(8), the party seeking relief from the judgment must show that its failure to act was not merely due to an omission involving the mistake, surprise or excusable neglect. Rather some extraordinary circumstances must be demonstrated affirmatively. This circumstance must be other than those circumstances enumerated in the preceding subsections of T.R. 60(B).

Id. (citation and quotation marks omitted).

The determination of what constitutes a reasonable time under Trial Rule 60(B) varies with the circumstances of each case. Williams v. Tharp, 934 N.E.2d 1203, 1215 (Ind. Ct. App. 2010) (citing Kessen v. Graft, 694 N.E.2d 317, 321 (Ind. Ct. App. 1998) (citation omitted), trans. denied), trans. denied. Relevant to the question of timeliness is prejudice to the party opposing the motion and the basis for the moving party's delay. Kessen, 694 N.E.2d at 321. With respect to the requirement that the movant establish a

12

meritorious claim or defense, a meritorious defense for the purposes of Rule 60(B) is "one that would lead to a different result if the case were tried on the merits." Wagler, 980 N.E.2d at 372 (citation omitted); see also Baxter v. State, 734 N.E.2d 642, 646 (Ind. Ct. App. 2000).

In this case, Margaret's motion for relief from the Foreclosure Decree is untimely. To the extent Margaret presents arguments or claims for relief under Trial Rules 60(B)(1) and (3), a motion for relief shall be filed not more than one year after the order was entered for reasons (1) and (3). See Trial Rule 60(B). The Foreclosure Decree was dated May 19, 2010, and file-stamped on May 27, 2010, and Margaret's motion for relief from the Foreclosure Decree was filed on January 31, 2014, well after the expiration of the one-year deadline. In addition, to the extent Margaret argues in her appellant's brief that "the basis claimed was actually Rule 60([B])(8)," Appellant's Brief at 3, we note that Margaret did not raise this basis in her motion for relief or develop an argument under that sub-paragraph on appeal and thus her claims under Rule 60(B)(8) are waived. Waiver notwithstanding, relief may be sought under Rule 60(B)(8) for reasons "other than those reasons set forth in sub-paragraphs (1) [and] (3) . . . ." Trial Rule 60(B). As a result, Margaret's claim of misrepresentation under sub-paragraph (3) is not available under Rule 60(B)(8), and to the extent Margaret's claim of lack of notice because of faulty process constitutes a claim of excusable neglect under Trial Rule 60(B)(1), see In re Marriage of Ransom, 531 N.E.2d 1171, 1173 (Ind. 1988) (noting that a lack of notice because of faulty process constitutes excusable neglect within the meaning of Trial Rule 60(B)(1)); Moore v. Terre Haute First

<u>Nat. Bank</u>, 582 N.E.2d 474, 479 (Ind. Ct. App. 1991) (citing <u>Ransom</u> for the same proposition), Margaret's claim of lack of notice is also unavailable under Rule 60(B)(8).

Based upon the record, Margaret's motion for relief under Trial Rule 60(B) was untimely and she waived her claim for relief under of Trial Rule 60(B)(8). The trial court did not err or abuse its discretion in denying Margaret's motion for relief from judgment.

II.

Claybridge requests appellate attorney fees and argues that the appeals in this case "are nothing but attempts by Deborah and Margaret to hinder and delay Claybridge from pursing its legal remedies against the Real Estate to satisfy its now seven year old Judgment." Appellee's Brief at 26. Appellate Rule 66(E) provides in part that this court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Our discretion to award attorney fees under Ind. Appellate Rule 66(E) is limited to instances when "an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." <u>Thacker v. Wentzel</u>, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). We must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. <u>Id.</u> Under the circumstances, we decline to order Margaret to pay the attorney fees of Claybridge with respect to this appeal.

CONCLUSION

For the foregoing reasons, we affirm the trial court's order denying Margaret's motion for relief under Trial Rule 60(B) and deny Claybridge's request for appellate fees.

14

Affirmed.

BARNES, J., and BRADFORD, J., concur.