

ATTORNEY FOR APPELLANT

Andrea L. Ciobanu
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Adam Lenkowsky
Roberts Litigation Group
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sanders Kennels, Inc.,<br>*Appellant/Defendant/*<br>*Counter-Plaintiff,*<br><br>v.<br><br>Gary Lane,<br>*Appellee/Plaintiff/*<br>*Counter-Defendant.* | July 28, 2020<br><br>Court of Appeals Case No.<br>20A-CC-675<br><br>Appeal from the Marion<br>Superior Court<br><br>The Hon. Gary L. Miller,<br>Judge<br><br>Trial Court Cause No.<br>49D03-1610-CC-37906 |

**Bradford, Chief Judge.**

# Case Summary

[1] Around 2013, Gary Lane contacted Sanders Kennels, Inc., a Georgia corporation, about purchasing Presa Canario dogs for breeding. Lane and Sanders Kennels eventually entered into a verbal contract, pursuant to which Lane agreed that he would sell any dogs received from Sanders Kennels under its name but that he could sell any puppies under his. Sanders Kennels agreed that it would provide a measure of lifetime care for the dogs and their offspring and would refer any potential customers from Indiana to Lane. From 2014 to 2016, Lane purchased, agreed to purchase, or received several Presa Canarios from Sanders Kennels, none of which were suitable for professional breeding.

[2] In October of 2016, Lane sued Sanders Kennels for breach of contract, fraud, theft, and conversion. In January of 2017, Sanders Kennels moved to dismiss Lane's complaint on the basis that the trial court lacked personal jurisdiction over it, which motion the trial court denied. In June of 2017, Sanders Kennels filed a counterclaim for defamation based on social media posts Lane had made that were critical of Sanders Kennels. In January of 2018, Sanders Kennels' counsel withdrew. In June of 2019, Lane issued his requests for admissions to Sanders Kennels, which the trial court deemed admitted when Sanders Kennels failed to respond. In November of 2019, Lane moved for summary judgment on his claims and Sanders Kennels' counterclaim, to which Sanders Kennels also failed to respond. In February of 2020, the trial court entered summary judgment in favor of Lane and awarded damages. In March of 2020, Sanders

Kennels moved for relief from judgment and/or to correct error, which motions the trial court denied.

[3] Sanders Kennels contends that the trial court abused its discretion in denying its motion for relief from judgment because it was never served with several filings and orders. Sanders Kennels also contends that the trial court abused its discretion in denying its motion to correct error because it lacked personal jurisdiction over Sanders Kennels and because it erroneously entered summary judgment in favor of Lane. Finding no merit in Sanders Kennels' arguments, we affirm.

## Facts and Procedural History

[4] Lane is a dog breeder in Indianapolis, and Sanders Kennels is a dog breeding business operated by Noah Sanders in Dawsonville, Georgia. Around 2013, after seeing a Sanders Kennels advertisement in *Dog Fancy* magazine in 2009, Lane contacted Sanders Kennels about purchasing Presa Canario dames and sires for breeding. Sanders Kennels represented to Lane that it would provide him healthy, breed-quality, pure-bred Presa Canarios, as well as supporting ancestry documentation. Lane and Sanders Kennels entered into an informal, unwritten business arrangement, pursuant to which Lane would purchase Presa Canarios and breed them, sell the dogs purchased from Sanders Kennels under the Sanders Kennels name, and would sell any offspring under his name. In return, Sanders Kennels agreed to provide lifetime support for the Presa Canarios they provided to Lane and their offspring, which consisted of

consultation regarding the sale, care, and treatment of the dogs. Finally, Sanders Kennels agreed to refer potential Indiana customers to Lane.

[5] Between November of 2014 and March of 2016, Lane purchased, agreed to purchase, or received several Presa Canarios from Sanders Kennels, all of which were unsuitable for professional breeding due to health problems, undocumented ancestry, overbreeding, or some combination of the above. Beginning in or around March of 2016, Lane made several postings on various social media that were critical of Sanders Kennels.

[6] On October 24, 2016, Lane sued Sanders Kennels, alleging breach of contract, fraud, theft, and conversion. The summons issued to the Indiana Secretary of State identified Sanders Kennels' address as 1301 Elliot Family Parkway, Dawsonville, Georgia, 30534 ("the Mailing Address"). On January 5, 2017, Sanders Kennels moved to dismiss Lane's complaint on the basis that the trial court lacked personal jurisdiction over it. On January 25, 2017, Lane responded to Sanders Kennels' motion to dismiss and attached a sworn affidavit from Lane detailing the informal business relationship he had with Sanders Kennels. On May 19, 2017, the trial court denied Sanders Kennels' motion to dismiss. On June 16, 2017, Sanders Kennels filed a counterclaim alleging defamation. On January 22, 2018, counsel for Sanders Kennels moved for leave to withdraw, which leave the trial court granted the next day. Counsel did not appear for Sanders Kennels again until March of 2020.

[7] Meanwhile, on June 7, 2019, Lane served his requests for admissions on Sanders Kennels, and the certificate of service indicated that requests were

mailed to Sanders Kennels at the Mailing Address. Sanders Kennels did not respond to the requests for admissions. On July 17, 2019, Lane moved to deem his requests for admissions from Sanders Kennels admitted, which motion indicated that it was mailed to Sanders Kennels at the Mailing Address. The trial court's August 7, 2019, order deeming the requests for admissions admitted listed Sanders Kennels' address as the Mailing Address, and the chronological case summary ("CCS") indicates that "Automated Paper Notice" was issued to the parties. Appellee's App. Vol. II p. 8.

[8] On November 14, 2019, Lane moved for summary judgment, and the certificate of service indicated that the motion was mailed to Sanders Kennels at the Mailing Address. On December 17, 2019, the trial court entered summary judgment in favor of Lane. The trial court's order indicates that a copy was sent to the Mailing Address, and the CCS shows an "Automated Paper Notice" being sent to Sanders Kennels. Appellee's App. Vol. II p. 8. On January 14, 2020, Lane moved to continue the damages hearing, which motion indicated that it was mailed to the Mailing Address, and when the trial court granted Lane's motion the next day, its order included Sanders Kennels' address, and the CCS shows that "Automated Paper Notice" was given. Appellee's App. Vol. II pp. 8–9. On February 12, 2020, the trial court entered final judgment in favor of Lane in the amount of $277,312.60. The trial court's order on final judgment included Sanders Kennels' address as the Mailing Address, and the CCS shows an "Automated Paper Notice" being sent to Sanders Kennels. Appellee's App. Vol. II p. 8.

On March 10, 2020, Sanders Kennels, represented by counsel again, moved to correct error and/or for relief from judgment pursuant to Indiana Trial Rules 59 and 60. On March 11, 2020, the trial court denied Sanders Kennels' motion to correct error and for relief from judgment.

# Discussion and Decision

## I. Motion for Relief from Judgment

Sanders Kennels contends that the trial court abused its discretion in denying its motion for relief from judgment. Trial Rule 60(B) provides, in part, that "[o]n motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default[.]"

> Our scope of review for the grant or denial of a T.R. 60(B) motion is limited to whether the trial court abused its discretion. An abuse of discretion occurs where the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief.

*McIntyre v. Baker*, 703 N.E.2d 172, 174 (Ind. Ct. App. 1998) (citations omitted).

Pursuant to Trial Rule 60(B)(1), a party may obtain relief from judgment for "mistake, surprise, or excusable neglect":

> Under subsection (B)(1), a trial court may relieve a party from a default judgment for "mistake, surprise, or excusable neglect" if the party files a motion within one year of the judgment and alleges a meritorious claim or defense. Addressed to the trial court's equitable discretion, "[a] Trial Rule 60(B)(1) motion does not attack the substantive, legal merits of a judgment, but rather addresses the procedural, equitable grounds justifying the relief from the finality of a judgment." [*Kmart Corp. v. Englebright*, 719 N.E.2d 1249, 1254 (Ind. Ct. App. 1999) (citation omitted), *trans.*

*denied*]. Because "[t]here is no general rule as to what constitutes excusable neglect under Trial Rule 60(B)(1)," "[e]ach case must be determined on its particular facts." *Id*. (citations omitted).

*Huntington Nat. Bank v. Car-X Assoc. Corp.*, 39 N.E.3d 652, 655 (Ind. 2015). A movant filing pursuant to subsection 60(B)(1) must also allege a meritorious claim or defense. T.R. 60(B).

[12] Sanders Kennels contends that its neglect to respond to Lane's requests for admissions, summary judgment motion, the trial court's order setting a damages hearing, and the trial court's order continuing the damages hearing was excusable because it did not have notice of any of those documents. Sanders Kennels claims the record indicates that only electronic service of these documents was attempted, service that would have failed because Sanders Kennels had no email address registered with the Indiana Case Management System at the time.

[13] While Sanders Kennels' claim would likely be compelling if true, the notion that Lane only attempted electronic service is fatally undercut by the record. Sanders Kennels does not dispute that the Mailing Address is correct, and it was to this address that Lane's complaint was first sent, which Sanders Kennels obviously received, because it retained counsel and responded to it. Regarding the orders at issue, the record clearly indicates that "Automated Paper Notice" was issued of the trial court's orders deeming the requests for admissions admitted, entering summary judgment in favor of Lane, and continuing the damages hearing. Appellee's App. Vol. II pp. 8–9. Moreover, all three of the orders contained the Mailing Address, and the order entering summary

judgment in favor of Lane specifically indicated that a copy was sent to that address.

As for Lane's filings, namely his requests for admissions, motion to deem the requests admitted, and summary-judgment motion, and the summary-judgment motion's accompanying memorandum, all contained certificates of service indicating that they were mailed to the Mailing Address. The requests for admissions provided that "a true and accurate copy of the foregoing was served on June 7, 2019 by U.S. Mail, Postage Prepaid, addressed to: Noah Sanders[,] SANDERS KENNELLS [*sic*] LLC[,] 1301 Elliot Family Parkway[,] Dawsonville, GA 30534[.]" Appellant's App. Vol. II p. 87. The motion to deem the requests admitted, the summary judgment motion, and the summary-judgment motion's accompanying memorandum all provided that "a true and accurate copy of the foregoing was mailed, postage prepaid, […] addressed to: Noah Sanders[,] SANDERS KENNELS [,] 1301 Elliot Family Parkway[,] Dawsonville, GA 30534[.]" Appellant's App. Vol. II pp. 74, 90; Vol. III p. 11.

Indiana Trial Rule 5(B)(2) provides that

> [i]f service is made by mail, the papers shall be deposited in the United States mail addressed to the person on whom they are being served, with postage prepaid. *Service shall be deemed complete upon mailing.* Proof of service of all papers permitted to be mailed may be made by […] *certificate of an attorney*. […] Service by delivery or by mail at such address shall be deemed sufficient and complete.

(Emphases added). Because the record clearly indicates that the filings in question were mailed, postage paid, to Sanders Kennels, the requirements of

Trial Rule 5(B)(2) were thereby satisfied. To summarize, because the record clearly indicates that Sanders Kennels was properly served with the documents in question, it has failed to establish that the trial court abused its discretion by failing to determine that its neglect was excused by a lack of notice. Consequently, we need not address Sanders Kennels' claim that it had a meritorious claim or defense to Lane's summary-judgment motion.

## II. Motion to Correct Error

[16] In the alternative, Sanders Kennels contends that the trial court abused its discretion in denying his motion to correct error.

> In general, we review a trial court's ruling on a motion to correct error for an abuse of discretion. *Hawkins v. Cannon*, 826 N.E.2d 658, 661 (Ind. Ct. App. 2005), *trans. denied*. However, to the extent the issues raised […] are purely questions of law, our review is de novo. *See Ind. BMV v. Charles*, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009) ("Although rulings on motions to correct error are usually reviewable under an abuse of discretion standard, we review a case de novo when the issue ... is purely a question of law."); *Christenson v. Struss*, 855 N.E.2d 1029, 1032 (Ind. Ct. App. 2006) (challenge to magistrate's authority to conduct hearing on motion to correct error presented question of law reviewed de novo).

*City of Indpls. v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), *trans. denied*.

### A. Motion to Withdraw Admissions

[17] Sanders Kennels argues that the trial court abused its discretion in not allowing it to withdraw its admissions. Trial Rule 36(B) provides, in part, that "the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission

fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." Sanders Kennels, however, did not raise this claim until its motion to correct error, and it is well-settled that "[a] party may not raise an issue for the first time in a motion to correct error[.]" *Van Winkle v. Nash*, 761 N.E.2d 856, 859 (Ind. Ct. App. 2002).[1]

## B. Personal Jurisdiction

[18] Sanders Kennels contends that the trial court erred in denying its motion to dismiss, which was based on its claim that the trial court did not have personal jurisdiction over it. Because personal jurisdiction is a question of law, the determination of the existence of personal jurisdiction is subject to *de novo* review. *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 965 (Ind. 2006). To the extent that personal jurisdiction turns on facts such as contacts of the defendant with the forum state, however, the findings of fact by the trial court are reviewed for clear error. *Id.*

> The Due Process Clause of the Fourteenth Amendment requires that before a state may exercise jurisdiction over a defendant, the defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)).

---

[1] This argument, like Sanders Kennels' Trial Rule 60(B) argument, is premised on Lane's alleged failure to serve Sanders Kennels with his requests for admissions. We have already determined, however, that the record does not support this allegation.

[….]

> If the defendant's contacts with the forum state are not "continuous and systematic," specific jurisdiction may be asserted if the controversy is related to or arises out of the defendant's contacts with the forum state. [*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).] Specific jurisdiction requires that the defendant purposefully availed itself of the privilege of conducting activities within the forum state so that the defendant reasonably anticipates being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). A single contact with the forum state may be sufficient to establish specific jurisdiction over a defendant, if it creates a "substantial connection" with the forum state and the suit is related to that connection. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957). But a defendant cannot be haled into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475, 105 S. Ct. 2174 (internal quotation marks omitted) (citing *Helicopteros*, 466 U.S. at 417, 104 S. Ct. 1868; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

*LinkAmerica Corp.*, 857 N.E.2d at 967.

[19]  As an initial matter, to the extent that Sanders Kennels disputes the nature of its business agreement with Lane, Lane submitted a sworn affidavit with his response to Sanders Kennels' motion to dismiss describing the nature of his business agreement with Sanders Kennels. The affidavit indicates that Lane and Sanders Kennels had an informal business arrangement, pursuant to which Lane would purchase Presa Canarios and breed them, sell the dogs purchased from Sanders Kennels under the Sanders Kennels name, and would sell any

offspring under his name. The affidavit also indicates that Sanders Kennels agreed to provide lifetime support for any Presa Canarios it sold to Lane, as well as any puppies, which included consultation regarding the sale, care, and treatment of the dogs. Finally, the affidavit indicates that Sanders Kennels agreed to forward inquiries from potential Indiana customers to Lane. The trial court was entitled to credit Lane's affidavit regarding the nature of the business relationship between Lane and Sanders Kennels and apparently did so. *LinkAmerica Corp.*, 857 N.E.2d at 965.

[20] That said, Sanders Kennels argues that it did not purposefully avail itself of the privilege of conducting business in Indiana because it did not attempt or intend to serve the Indiana market, it did not transport dogs to Indiana, it is not registered to do business in Indiana, no employee ever travelled to Indiana for business purposes, contracts were agreed upon over the telephone, and payment was made using a credit card processing system in Georgia. Sanders Kennels also argues that its 2009 advertisement in *Dog Fancy* did not create a substantial connection to Indiana. While this is all well and good, Lane does not argue that any of it is the reason Indiana can exercise personal jurisdiction over Sanders Kennels—he argues that the anticipated ongoing nature of their business agreement is. Sanders Kennels responds to this contention by arguing, essentially, that any business relationship it may have had with Lane is irrelevant because Lane's claims arose from the sales of individual dogs, not the business relationship. We do not believe that it is possible to separate the sale of the dogs from the business agreement. Indeed, the sale of dogs was the entire

point of the business relationship, from which all of the other obligations flowed. Sanders Kennels would not be able to provide lifetime support for dogs that were never delivered, and there would be no point in referring potential customers to Lane if he had no Presa Canarios to sell.

With this in mind, we turn to the question of whether Lane and Sanders Kennels' business agreement was sufficient to subject Sanders Kennels to the jurisdiction of Indiana courts. The United States Supreme Court has noted that "[w]ith respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp.*, 471 U.S. at 473 (citation omitted). Moreover, when considering contracts, "prior negotiations *and contemplated future consequences*, along with the terms of the contract and the parties' actual course of dealing […] must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id*. at 479 (emphasis added).

We have little trouble concluding that Sanders Kennels created sufficient contacts with Indiana to establish specific jurisdiction; its contacts with Indiana are hardly "random, fortuitous, or attenuated[,]" nor are we determining that it is subject to the jurisdiction of Indiana's courts by virtue "of the unilateral activity of another party or a third person." *LinkAmerica Corp.*, 857 N.E.2d at 967 (citing *Burger King*, 471 U.S. at 475). Sanders Kennels reached out beyond Georgia into Indiana and created what was anticipated to be a continuing

relationship with Lane, with all of its expected benefits and obligations. In light of Sanders Kennels' continuing obligations to Lane, it was reasonable to expect that it might be haled into an Indiana court at some point. *See LinkAmerica Corp.*, 857 N.E.2d at 967. Because we conclude that the trial court had specific personal jurisdiction over Sanders Kennels as matter of law, Sanders Kennels has failed to establish that the trial court erred in denying its motion to dismiss.[2]

## C. Summary Judgment

Finally, Sanders Kennels contends that the trial court abused its discretion in denying its motion to correct error, in which it sought the withdrawal of its entry of summary judgment in favor of Lane on his claims and Sanders Kennels' counterclaim. When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id*.; Ind. Trial Rule 56(C). To prevail on a motion

---

[2] If it is determined that a defendant has contacts with the forum state sufficient for general or specific jurisdiction, due process also requires that the assertion of personal jurisdiction over the defendant be reasonable. *LinkAmerica Corp.*, 857 N.E.2d at 967 We need not address the question of whether assertion of personal jurisdiction over Sanders Kennels is reasonable, however, because Sanders Kennels argues only that minimum contacts did not exist. It is worth noting that the assertion of personal jurisdiction will rarely be found unreasonable if minimum contacts exist. *Id*.

Sanders Kennels also claims that the trial court does not have jurisdiction pursuant to Trial Rule 4.4, commonly referred to as Indiana's long-arm provision. The Indiana Supreme Court has stated that "[t]he 2003 amendment to Indiana Trial Rule 4.4(A) was intended to, and does, reduce analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause." *LinkAmerica Corp.*, 857 N.E.2d at 967 Consequently, we do not separately address Sanders Kennels' arguments pursuant to Trial Rule 4.4(A).

for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Merchs. Nat'l Bank*, 741 N.E.2d at 386.

[24] Sanders Kennels makes several arguments regarding Lane's motion for summary judgment and designated evidence, including that some of his designated evidence was improperly included, he failed to designate evidence tending to show the existence of a verbal contract, and that several claims were insufficiently pled. We need not address any of these claims on the merits, however, because "[i]t is well settled that arguments not presented to the trial court on summary judgment are waived on appeal." *King v. Ebrens*, 804 N.E.2d 821, 826 (Ind. Ct. App. 2004). It also does not help Sanders Kennels that it raised some or all of these arguments in its motion to correct error, for it is equally well-settled that, as mentioned, "[a] party may not raise an issue for the first time in a motion to correct error[.]" *Van Winkle*, 761 N.E.2d at 859. Sanders Kennels has failed to establish that the trial court abused its discretion in denying his motion to correct error.

[25] The judgment of the trial court is affirmed.

Baker., J., and Pyle, J., concur.